IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| TOBY CROSBY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 14-CV-974-NJR-SCW |
| | ) |
| INDIANA RAILROAD CO., | ) |
| | ) |
| Defendant. | ) |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, District Judge:**

This matter is currently before the Court on the Motion to Reconsider Denial of Motion to Transfer filed by Defendant Indiana Railroad Co. ("the Railroad") (Doc. 20). The Railroad asks the Court to reconsider its previous Order entered on December 31, 2014, denying the Railroad's request to transfer venue to the United States District Court for the Southern District of Indiana pursuant to 28 U.S.C. § 1404(a) (Doc. 19).

Where, as here, a party seeks reconsideration not of a final judgment, but of an interlocutory order, the motion is properly considered under Federal Rule of Civil Procedure 54(b). FED. R. CIV. P. 54(b); *Galvan v. Norberg,* 678 F.3d 581, 587 n.3 (7th Cir. 2012). Rule 54(b) provides that an interlocutory order that does not adjudicate all claims involving all parties to a suit "may be revised at any time before the entry of judgment." FED. R. CIV. P. 54(b). Motions to reconsider an interlocutory order under Rule 54(b) are governed by the law of the case doctrine. *Santamarina v. Sears, Roebuck & Co.,* 466 F.3d 570, 571–72 (7th Cir. 2006); *Pickett v. Prince,* 207 F.3d 402, 407 (7th Cir. 2000) ("Unlike the case in which a *judgment* is sought to be vacated . . . a motion to reconsider a *ruling* is constrained only by

the doctrine of the law of the case.") "[T]he law of the case doctrine embodies the notion that a court ought not to re-visit an earlier ruling in a case absent a compelling reason, such as manifest error or a change in the law, that warrants re-examination." *Minch v. City of Chi.*, 486 F.3d 294, 301 (7th Cir. 2007).

The Court denied the Railroad's motion to transfer pursuant to 28 U.S.C. § 1404(a) on the grounds that venue in the Southern District of Illinois was proper, and the Railroad failed to meet its burden of proving that a transfer to Indiana will serve the convenience of the parties and witnesses and promote the interests of justice (Doc. 19). Specifically, the undersigned concluded, in relevant part, that the balance of convenience was a close call (Doc. 19). One party was going to be inconvenienced to some degree no matter the forum, but shifting inconvenience from one party to another is not a sufficient basis for transfer (Doc. 19). *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

The Railroad first argues that, in conducting its transfer analysis, the Court should have given little, if any, weight to the convenience of Crosby's treating physicians, who are located in and around St. Louis, Missouri. The Railroad cites to new evidence indicating that Crosby's decision to treat with Dr. Matthew Gornet, a physician based in St. Louis, was made in consultation with his attorney (Doc. 20, p. 4). The Railroad surmises that Crosby's "counsel directed [him] to see physicians in St. Louis, then used the location of those physicians as the basis to defeat a forum non conveniens motion and keep this litigation in [the Southern District of Illinois]." (Doc. 20, p. 4). According to the Railroad, this constitutes "blatant forum shopping" and, therefore, the convenience of Crosby's treating physicians should be given minimal consideration, which in turn tips the scales in favor of transfer.

Crosby's counsel denies forum shopping just as vehemently as the Railroad accuses him of it. Counsel represents that Crosby was initially seen by a physician in Indianapolis where he received "abysmal treatment" (Doc. 22). Crosby wanted a second opinion, and he conferred with his attorney who gave him "the names of several physicians" (Doc. 22). After researching each of the names, Crosby settled on Dr. Gornet (Doc. 22). Crosby chose to remain under the care of Dr. Gornet, which led to receiving treatment from two other physicians in the St. Louis area (Doc. 22). Crosby's counsel argues that it is "untrue, and inconceivable" that Crosby underwent spinal injections, spinal surgery, and shoulder surgery in St. Louis rather than in Indianapolis "to gain a perceived forum advantage." (Doc. 22). According to him, transferring the case to Indiana would essentially "sanction [Crosby] for seeking out the best medical care that he could find after being treated poorly by a physician . . . in Indiana" (Doc. 22).

The Court concludes that, contrary to the Railroad's assertion, the simple fact that Crosby got Dr. Gornet's name from his attorney does not render the convenience of Crosby's treating physicians any less relevant to the transfer analysis under § 1404(a) or lead to the incontrovertible conclusion that a transfer is warranted. Crosby received bona fide medical treatment from Dr. Gornet, along with the other two St. Louis-area physicians, on a number of occasions over the course of more than a year prior to filing suit (*see* Doc. 15-1). The nature and length of Crosby's course of treatment makes it hard to believe that his principal reason for going to Dr. Gornet was to bolster support for maintaining venue in this district. Furthermore, as the Court noted in its previous Order, Crosby represented that the main focus of the trial will be his damages (Doc. 19, p. 7). The Railroad did not dispute that representation the first time around or in its motion for reconsideration (*see* Docs. 18, 20).

Therefore, it appears to the Court that the testimony of Crosby's treating physicians is vitally important, and their convenience is not only appropriately considered, but arguably should be given considerable weight. *See Hanley v. Omarc, Inc.*, 6 F. Supp. 2d 770, 775 (N.D. Ill. 1998) ("The determination of whether a particular venue is more convenient for the witnesses should not turn on which party produces a longer witness list. Rather, the court must look to the nature and quality of the witnesses' testimony with respect to the issues of the case.").

The Railroad also argues that the convenience of Crosby's treating physicians deserves nothing more than minimal consideration in a transfer analysis because they are retained experts (Doc. 20). At this point, there is no evidence that suggests Crosby's attorney asked Dr. Gornet, or any of the other treating physicians, to provide a causation opinion in preparation for litigation. *See Meyers v. Nat'l R.R. Passenger Corp,.* 619 F.3d 729, 734-35 (7th Cir. 2010) ("[A] treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one "retained or specially employed to provide expert testimony in the case," and thus is required to submit an expert report in accordance with Rule 26(a)(2)."). But even if that were the case, it does not change the fact that Dr. Gornet was also a treating physician and an indispensable witness. Therefore, the Court remains convinced that considering his convenience was appropriate.

Finally, the Railroad argues that the undersigned should reconsider her Order in light of the Order entered by Chief Judge Michael Reagan approximately one month later in case number 14-cv-979 (Doc. 20). In that case, which according to the Railroad presented circumstances "very similar" to the instant matter, Chief Judge Reagan ruled that the Southern District of Indiana was a more convenient forum. The fact that Judge Reagan

reached a different conclusion does not mean that the undersigned committed a manifest error of law or abused her discretion in denying the Railroad's transfer request. *See Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 979 (7th Cir. 2010); *Chicago, Rock Island, & Pac. R.R. Co. v. Igoe*, 220 F.2d 299, 304 (7th Cir. 1955). It is entirely possible that two judges presented with similar, or even identical, facts could reach different conclusions given that § 1404(a) permits a "flexible and individualized analysis" based on "case-by-case consideration of convenience and fairness." *Research Automation, Inc.*, 626 F.3d at 978, 979.

In sum, the undersigned considered all of the relevant public and private interest factors and determined that the Southern District of Indiana was not clearly the more convenient forum, and a transfer was not necessary to promote the interests of justice (Doc. 19). While the Railroad disagrees with that decision and would much prefer to litigate this matter in the Indiana court, the Railroad has not given the Court a compelling reason to overturn its previous decision. Accordingly, the motion to reconsider (Doc. 20) is **DENIED**.

**IT IS SO ORDERED.**

DATED:   April 30, 2015

s/ Nancy J. Rosenstengel
**NANCY J. ROSENSTENGEL**
**United States District Judge**